**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VICTORIA WEILAND, on her own behalf and as representative of Joseph Weiland, deceased, and her son Brian Geise, )<br><br>Plaintiff, )<br><br>v. )<br><br>ASSURECARE, INC.; ASSURECARE OF ILLINOIS, INC; ASSURECARE, INC. EMPLOYEE HEALTH BENEFIT PLAN; CRAIG MELL and RICHARD J. AGAR, )<br><br>Defendants. | No. 12 C 01947<br><br>Judge John J. Tharp, Jr. |

**MEMORANDUM OPINION AND ORDER**

The plaintiff filed this suit against multiple defendants under 29 U.S.C. § 1132(c)(1) and 29 U.S.C. § 1132(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Pending before the Court is a motion to dismiss all claims against two of the defendants named in the Amended Complaint, AssureCare of Illinois, Inc., and Richard J. Agar, and the plaintiff's motion to strike documents filed by AssureCare of Illinois, Inc., and Agar in support of their motion to dismiss. For the reasons that follow, the Court grants Weiland's motion to strike and denies the defendants' motion to dismiss.

I.  **BACKGROUND**

The plaintiff, Victoria Weiland, filed suit on behalf of herself, her late husband, and her dependent son on March 16, 2012. Weiland was employed by an entity that then operated under the trade name "AssureCare," comprising all of the defendants named in the Amended Complaint other than the Assurecare, Inc., Employee Health Benefit Plan ("the Plan"). Weiland

alleges that Assurecare wrongly refused to allow her to enroll in the Plan, for which she was eligible, and failed to provide notice for continuation of benefits upon her termination of employment. As a result, Weiland asserts that she and her family lost health insurance coverage and incurred substantial unpaid medical expenses.

Weiland's Amended Complaint includes three counts. Count I, unaffected by this motion, seeks benefits and a clarification of Weiland's rights against the Plan. Counts II and III are the focus of the motions under consideration here. Count II alleges a breach of fiduciary duty against AssureCare, Inc., Craig Mell, and Richard J. Agar. Here, she claims that when she sought medical benefits, her employer wrongfully refused to allow her to enroll in the Plan in part due to her family medical history, violating its fiduciary duty to disclose material information to plan participants. Am. Compl. ¶¶ 17, 18, 26. Count III alleges a COBRA notice violation against AssureCare of Illinois, Inc., AssureCare, Inc., Mell, and Agar. Here, she claims that her employer gave no notice of her rights of continuation of benefits. Am. Compl. ¶ 32, 33. For these violations, Weiland seeks equitable relief, payment of a statutory penalty, fees, and costs. She invokes federal jurisdiction under 29 U.S.C. § 1132(e)(1).

Crucial to Weiland's case against the defendants that seek to be dismissed from the suit here is her allegation that they played a shell game with their corporate entities to evade their employment obligations. According to her explanation, each of the corporate defendants named in Counts II and III are alter egos of defendant Agar (and of defendant Mell, who has not moved to dismiss these counts). On September 10, 2012, this Court granted leave to conduct discovery into the viability of the defendants' corporate entities and piercing the corporate veil; a week later, on September 17, defendants AssureCare of Illinois, Inc., and Agar moved to dismiss all claims against them for failure to state a claim under Rule 12(b)(6), attaching in support an

affidavit by Agar. Weiland responded in opposition and further moved to strike the Agar affidavit.

## II. Motion to Strike Documents Filed in Support of the Motion to Dismiss

The Court first considers Weiland's request to strike the Agar affidavit. If, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Seventh Circuit observes a "narrow" exception that permits courts to examine documents attached to a motion to dismiss if they are "referred to in the complaint," "central to the plaintiff's claim," and "concededly authentic." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). The exception is pointedly not "intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Id.* (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). To consider documents that require "discovery to authenticate or disambiguate," a judge must "convert the defendant's motion to a Rule 56 motion." *Id.* at 739. When that occurs, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

After the Court ordered discovery into the viability of the corporate entities at issue here on September 10, 2012, it would have made sense for a motion on the merits to follow based on that discovery (and filed in conformance with Local Rule 56.1). Instead, AssureCare of Illinois, Inc., and Agar filed a Rule 12(b)(6) motion to dismiss and attached an affidavit by Agar. In the affidavit, Agar denies knowing the plaintiff, denies hiring or firing her, and denies making statements to the Illinois Department of Labor regarding AssureCare of Illinois, Inc.'s ability to insure Weiland. He also offers a differing account of why Weiland did not secure insurance coverage through AssureCare: voluntary denial. The Amended Complaint does not refer to

Agar's affidavit, which would require discovery to authenticate. Weiland has not yet had a full opportunity to mount an argument to disprove the allegations made in the affidavit or, more generally, to present material regarding a motion for summary judgment. The time for that will be following discovery. Weiland's motion to strike is granted.

### III. Motion to Dismiss Claims Against AssureCare of Illinois, Inc., and Agar

In their motion, defendants AssureCare of Illinois, Inc. and Richard Agar ask the Court to dismiss all claims against them. They argue that the proper defendant to a claim for a breach of ERISA fiduciary duty is the plan fiduciary, and the proper defendant in a claim for a COBRA notice violation is the plan administrator. Their position is that AssureCare of Illinois, Inc., is an improper defendant to Count III because it is not the administrator of the benefits plan. Similarly, they contend that Agar is an improper defendant to Counts II and III because he is not the plan administrator or fiduciary. The defendants also argue that the claims against Agar are meritless.

The summary plan description attached to the Amended Complaint lists AssureCare, Inc., as both fiduciary and administrator. Am. Compl. Ex. C. The moving defendants cite AssureCare, Inc., as the plan fiduciary, administrator, and proper defendant. Weiland's theory is that AssureCare, Inc., is actually an alter ego of AssureCare of Illinois, Inc., Agar, and Mell. Weiland argues that the corporate form should be disregarded to hold each named defendant liable as an alter ego or by piercing the corporate veil. To assess the claims challenged here, the Court needs to assess whether the complaint sufficiently states a claim for both the ERISA fiduciary and notice violations and either alter ego liability or veil piercing.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This means the complaint must contain sufficient detail to "give the defendant fair notice of what the claim is and the

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint contains enough detail if it presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The factual allegations "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with "enough details about the subject-matter of the case to present a story that holds together." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). The required specificity "rises with the complexity of the claim," *McCauley*, 671 F.3d at 616–17.

In reviewing a motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiffs. *Erickson v. Pardus*, 551 U.S. 89, 127 (2007). However, the Court does not accept as true any allegations that are mere legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009).

### A. The ERISA Fiduciary and COBRA Notice Violations Claims

ERISA was enacted in 1974 to protect pensions and other employee benefits by way of a highly reticulated federal scheme. In part, it does so by "setting forth certain general fiduciary duties" applicable to benefit plans, including health insurance benefit plans. *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996); *Sullivan v. CUNA Mut. Ins. Soc'y*, 649 F.3d 553, 555 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 2379 (2012). As amended by the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1166, ERISA also requires plans to give covered employees notice of their continuation coverage rights. Weiland alleges that defendants violated both of these obligations.

The defendants are correct that a "claim for breach of fiduciary duty under ERISA is only valid against a 'fiduciary,'" that is, "a person who exercises authority or discretion over the

5

administration of a plan." *Nauman v. Abbott Labs.*, 669 F.3d 854, 859 (7th Cir. 2012) (citations omitted); *Sullivan*, 649 F.3d at 556. Wherever a plaintiff charges breach of an ERISA fiduciary duty, "the threshold question" is "whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Fiduciary duties extend only to "administration" of a plan. *Sullivan*, 649 F.3d at 556. Whether a person acts as a fiduciary depends on whether he or she exercises "a power 'appropriate' to carrying out an important plan purpose," such as sharing information about a plan with employees to inform their decisionmaking. *Varity Corp.*, 516 U.S. at 502. For example, an employer exercised sufficient "discretionary authority" in "carrying out an important plan purpose" to be acting as a fiduciary when misrepresenting the "likely future of plan benefits" to employees. *Varity Corp.*, 516 U.S. at 502–03. Here, Weiland alleges that she was an employee qualified to participate in her employer's benefit plan. If, as she claims, her AssureCare employer misrepresented her ability to enroll and refused to enroll her, Am. Compl. ¶¶ 16, 17, 26, it would have violated its duty with regard to the important plan purpose of conveying accurate information to employees to inform their enrollment decisionmaking.

A plan administrator that fails to provide the required COBRA notice may be fined or subjected to equitable relief as a court deems proper under 29 U.S.C. § 1132(c)(1). Again, the defendants are correct that penalty claims for violations of these requirements may only be brought against the administrator of a plan. *Klosterman v. W. Gen. Mgmt., Inc.*, 32 F.3d 1119, 1122 (7th Cir. 1994). Here, Weiland alleges that her employer failed to provide her with any COBRA notice at all upon her termination, despite the fact that she was eligible. Am. Compl. ¶ 20, 32, 33. If true, the failure is sufficient for liability.

6

**B. Alter Ego Liability and Veil Piercing in ERISA Claims**

Key to the defendants' motion to dismiss is whether Weiland has named them as rightful defendants to the above claims, whether as alter egos of the named fiduciary and administrator or by piercing the corporate veil. Neither the Supreme Court nor the Seventh Circuit have directly addressed whether alter ego liability or veil piercing are available in a claim regarding violations of one's ERISA fiduciary duty or COBRA disclosure responsibilities, though many circuits apply versions of each doctrine (somewhat interchangeably) in ERISA cases. *See, e.g.*, *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 305, 308 (1st Cir. 1998) (emphasizing that National Labor Relations Act alter ego jurisprudence is applicable in ERISA cases where the doctrine provides the basis for liability); *Minn. Laborers Health & Welfare Fund v. Scanlan*, 360 F.3d 925, 928 (8th Cir. 2004) (adopting the Tenth Circuit's two-prong veil-piercing test). The Seventh Circuit has applied both doctrines, but has held that they are distinguished by the fact that the alter ego doctrine is one of direct liability and veil piercing is a doctrine of derivative liability:

> Efforts to pierce the corporate veil ask a court to hold *A* vicariously liable for *B*'s debt. … But a contention that *A* is *B*'s "alter ego" asserts that A and B are *the same entity*; liability then is not vicarious but direct.

*Bd. of Trs., Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000) (citing *Varity Corp.*, 516 U.S. at 492; *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 85 F.3d 1282, 1286–87 (7th Cir. 1996)). This distinction suggests that the question here requires application of the alter ego doctrine, because the plaintiff seeks to hold the moving defendants directly liable for her damages based on their common control of her employer. *See Cent. States*, 85 F.3d at 1286.

When alter ego liability is alleged, the Seventh Circuit instructs courts deciding whether "to disregard the corporate form" to consider: "(1) the amount of respect given to the separate identity of the corporation by its shareholders; (2) the fraudulent intent of the incorporators; and (3) the degree of injustice visited on the litigants by respecting the corporate entity." *Cent. States*, 85 F.3d at 1287 (citing *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 461 (7th Cir.), *cert. denied*, 502 U.S. 939 (1991)). Weiland alleges facts that, if true, establish each of the three elements.

To establish the first element, Weiland alleges a high degree of interrelationship between AssureCare, Inc., AssureCare of Illinois, Inc., Agar, and Mell that plausibly suggests a lack of respect for corporate identity. Weiland alleges that Agar and Mell owned and directed AssureCare, Inc., AssureCare of Illinois, Inc., and their common parent company, Comp Care Systems Corporation. Am. Compl. ¶¶ 2, 3; Defs.' Corp. Disc. Stmnt., Dkt. 11, ¶ 2; Reply, Dkt. 43, at 5 n.4. Furthermore, she claims that together, Agar and Mell operated and controlled her Bolingbrook employer under a single joint trade name "AssureCare." *Id.* ¶¶ 5, 7. One entity's "direct control" over another's "hiring, recruiting, supervising, and maintenance of payroll records" may be probative of a lack of respect for the separate identity of corporations. *See Cent. States*, 85 F.3d at 1288. Weiland also alleges that the Bolingbrook AssureCare operation continues under Mell and Agar's direction today with the same employees working the same jobs for the same managers, but under another trade name. Am. Compl. ¶ 8. This pattern suggests an alter ego successor. *See Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010) (considering "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership"). Weiland goes on to allege that Agar and Mell have repeatedly allowed their corporate entities to

go into default or revoked status, but continue to oversee the same facility and staff in Bolingbrook. Am. Compl. ¶ 8. According to Weiland, the joint operation is financially irresponsible, operating on such an underfunded basis that entities repeatedly become insolvent. *Id.* ¶¶ 8, 9. These facts, if true, tell a plausible story of the corporate shell game that Weiland describes.

Weiland also alleges that the defendants operated these businesses with fraudulent intent, a factor that is "critical" to the alter ego test. *Cent. States*, 85 F.3d at 1288 (citing *Trs. of Pension Funds of Local 701 v. Favia*, 995 F.2d 785, 789 (7th Cir. 1993)).[1] She claims that Agar and Mell have played a "shell game" of "opening and closing corporate entities," including the defendant companies here, to "evade employment obligations." Am. Compl. ¶ 8. While this statement taken alone may border on conclusory, Weiland's fiduciary claim includes a list of allegations that the AssureCare entity for which she worked made "misleading statements" to deny her enrollment in its employee welfare benefits plan. *Id.* ¶ 26. Notably, she complains that AssureCare told her that she "worked for a 'separate entity.'" *Id.* Drawing all reasonable inferences in favor of Weiland, these facts plausibly suggest that the entities' corporate forms were fudged to evade federally mandated employment benefit obligations.

Finally, injustice may result if the Court were to rule now to dismiss AssureCare of Illinois, Inc. and Agar. According to the Amended Complaint, AssureCare, Inc. and AssureCare of Illinois, Inc. are both in default, while Agar continues to operate the same entity under another

---

[1] The Court notes, however, that *dicta* in *Central States* may be read to suggest that, in a case such as this, where an individual is pursuing a claim for benefits, "the underlying congressional policy behind ERISA" favors eliminating the requirement of fraudulent intent. 85 F.3d at 1288. Because the Court concludes here that, even imposing a requirement of fraudulent intent, Weiland has stated a claim, this question does not require further analysis here. This opinion is not intended as a definitive statement on whether a showing of fraudulent intent is required for plaintiff to prevail on her claims.

name. Am. Compl. ¶¶ 2, 3, 8. While it is not yet clear which defendants to the suit are solvent, allowing this complaint to proceed here serves the policy and purpose of ERISA by preventing misuse of the corporate form to effectively evade liability before proof can be considered.

The defendants cite a number of cases in which courts have disallowed suit against parties who were not fiduciaries or administrators, but this motion does not involve the clearly delineated plan, fiduciary, and administrator identities seen in the cases cited. Weiland alleges that these defendants are one and the same. On this point, it is important to note that the defendants have not contested AssureCare, Inc.'s status as fiduciary and administrator. Because Weiland plausibly asserts that the moving defendants are in fact the same as AssureCare, Inc., the formal distinctions that underlie the cases cited do not affect this claim for direct liability.

Furthermore, the defendants' citation to *Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 520 F. Supp. 2d 1022, 1035 (N.D. Ill. 2007), does not support their claim that a claim for alter ego liability should not proceed. *Jacobs* was before the court on post-trial motions following an evidentiary hearing, not a motion to dismiss. The court noted that the alter ego theory was raised late in the *Jacobs* proceedings in an attempt to salvage the case; it "was not tried as an 'alter ego' or veil-piercing sort of case." 520 F. Supp. 2d at 1035. Here, Weiland is attempting to do just that. The defendants predict that "discovery will not lead to information" to support Weiland's claim. Def.'s Reply 6. To be sure, AssureCare of Illinois, Inc. and Agar may still be able to put Weiland to her proof and prevail as they predict, but it would be premature to rule on the merits now.

\*   \*   \*

For the reasons set forth above, the plaintiff's motion to strike is granted, and the defendants' motion to dismiss is denied.

10

Date: September 10, 2013

John J. Tharp, Jr.
United States District Judge

11